LYNN E. BOWMAN, doing business as BOWMAN PLUMBING & HEATING COMPANY, v. C. O. JONES BUILDING COMPANY, a Corporation, Appellant.—58 S. W. (2d) 718.

Division One, March 16, 1933.

*Gossett, Ellis, Dietrich & Tyler* for appellants.

**522**

*Julius C. Shapiro* for respondent.

ATWOOD, J.—The above cause was transferred to this court by the Kansas City Court of Appeals because one of the judges therein sitting deemed the majority opinion (reported with dissenting opinion in 50 S. W. (2d) 203) contrary to certain decisions of the Supreme Court. The cause must now be determined as in case of jurisdiction obtained by ordinary appellate process. [Constitution of Missouri, Art. 6, Sec. 6 of Amendment adopted in 1884.]

The action is for recovery of an amount claimed to be due on account of alleged extras furnished under a plumbing and heating contract, and to establish a mechanic's lien therefor. Verdict and judgment went for plaintiff in the sum of $2371.99 as a lien claim and against defendants on their counter claim, from which judgment defendant C. O. Jones Building Company only has appealed.

The petition alleged existence of a contract between the parties by the terms of which plaintiff was to furnish all labor and material necessary for the complete installation of the plumbing and heating contemplated in the construction of two hotel and apartment buildings in Kansas City, Missouri, "in accordance with certain plans and specifications submitted to said plaintiff and being and forming a part of said contract;" that the sum agreed upon for the original work designated was $37,500, said work to be done according to and under one general contract with said defendant; "that said plans

and specifications incorporated by reference in said contract and ma
part thereof, provided that said contracting parties, at any time dur
ing the course of the construction of said work might add to or re-
quire certain additional labor, and fixtures as by them might be
deemed advisable;'' that certain extras were ordered by defendant,
including ''slop sinks, drinking fountains, connecting gas stoves, in-
stalling ice water cocks, ice water lines, and other miscellaneous
items,'' all of which were to be paid for at their reasonable value;
that the total amount that became due and was owing to plaintiff was
$40,341.88; that the sum of $37,940 had been paid, and that the bal-
ance of $2,401.88 was due plaintiff.

The answer admitted execution of the contract as alleged, stated
that plaintiff had been paid in full for all work and material furnished
by him, and denied other allegations of the petition. By way of fur-
ther answer and counter claim it also alleged that plaintiff had
breached his contract in several respects, particularly by failing to
to furnish a 4-inch water pipe known as a ''fire line'' with proper
connections and installing in lieu thereof a ''dummy'' line consisting
of a 2-inch water pipe without connections; and by reason of the
breaches pleaded defendant was damaged in the sum of $4,116.
Plaintiff's reply was in the nature of a general denial.

The points for decision on this appeal involve plaintiff's right to
recover for the installation of ''slop sinks'' shown to be of the rea-
sonable value of $1,362.74, and defendant's right to recover on its
counter claim for the item of plaintiff's failure to furnish the ''fire
line.'' Appellant contends that by the terms of the contract plain-
tiff was bound to furnish both of these items. Respondent construes
the contract to the contrary, and further contends that even if de-
fendant had a right to require plaintiff to furnish these items under
the contract, such right was subsequently waived and that the slop
sinks were ordered as extras.

The ''fire line'' which appellant says should have been in-
stalled was not expressly called for in any of the plans and specifica-
tions, but appellant relies on a provision in the plumbing specifica-
tions, which it is conceded plaintiff received prior to submitting his
proposal, stating that ''all work is to be done and tested in strict
accordance with the Ordinances in force in this city,'' and on proof
at the trial that the ordinances of Kansas City in force at the time
these buildings were erected required the installation of such a fire
line in the construction of buildings of that character. However,
plaintiff testified that when he discussed this item with defendant's
president, C. O. Jones, Mr. Jones stated that he did not really want
a fire line as he had mechanical extinguishers, but he was afraid that
the building inspector would insist on putting them in, although he
did not know what the regulations were as to size, but that defendant

"should run something up over there that I could get by the building inspector; that is all I care." Plaintiff then said: "Shall I run a two-inch galvanized pipe up there?" Jones replied: "Yes, we ought to run them up in the first building, and if it is not all right we will have to do what the building inspector says on the next one." There was evidence that plaintiff's installation was in accordance with this agreement, that defendant did in fact "get by" as the work was approved by the city inspector, and plaintiff testified that he received no complaint about the fire line prior to the filing of this suit. Defendant's counter claim as to this item was properly submitted and there was sufficient evidence to support the jury's verdict denying same.

Appellant's contention with respect to the item of "slop sinks" arises out of the trial court's refusal to give a peremptory instruction in the nature of a special demurrer requested by defendant at the close of the whole case. The instruction is as follows:

"The court instructs you that as to plaintiff's claim for $1,362.74 for work and material in respect to the item of slop-sinks mentioned in evidence the same are covered in the express written contract between plaintiff and defendant Building Company, and plaintiff is not entitled to recover therefor and you must therefore allow nothing therefor."

Counsel for appellant say that this instruction should have been given under the familiar rule that it is the court's duty to construe unambiguous written instruments and declare their legal effect. [Black River Lumber Co. v. Warner, 93 Mo. 374, 384, 6 S. W. 210; Evans v. Graden, 125 Mo. 72, 79, 28 S. W. 439; Ford v. Dyer, 148 Mo. 528, 541, 41 S. W. 1091.] Counsel for respondent, on the other hand, contends that this rule is not applicable because the plans and specifications were ambiguous with respect to whether or not slop sinks were required, and the question was one for the jury under all the evidence.

Plaintiff testified that the only plans and specifications he received before submitting his proposal were a typical floor and attic piping plan marked Exhibit D, the foundation and first floor plan marked Exhibit E, and the plumbing and gas fitting specifications marked Exhibit F. According to defendant's evidence plaintiff received a full set of plans and specifications before submitting his proposal, a part of which was a typical floor plan plainly calling for slop sinks and shown on Exhibit G.

Exhibit F, which plaintiff admits he had before him when his bid was prepared and submitted, contained this requirement: "Stop sinks too shall have separate risers with cut-offs." The architect testified at the trial that this use of the word "stop" was a typographical error and meant "slop." Plaintiff and a plumber

in his employ both testified that they did not know of any such thing as a "stop" sink. Plaintiff repeatedly said that he did no know what the term meant in these specifications, but he evidently did because in arguing that the most this provision required was the installation of risers for slop sinks counsel for respondent says that this "was done by plaintiff." It seems that the error in typing would have been obvious and the true meaning apparent to any plumbing contractor, but even if the word "stop" be wholly disregarded as meaningless, there would still remain the requirement that "sinks too shall have separate risers with cut-off." Plaintiff will be presumed to have considered this requirement in his proposal, and he could not have figured the cost even of such risers without assuming that the installation of a particular kind of sink was contemplated. There is no claim that he was misled as to the kind and number of risers required. It follows that he must have understood they were for slop sinks. It cannot be that this obvious mistake in typing the word "slop" imported "doubleness of meaning" into the contract thereby making its interpretation a question for the jury. To an experienced plumber such as plaintiff was the word "stop" in the connection it was used undoubtedly meant "slop." If not so read it was meaningless, and plaintiff was then put on inquiry as to the kind and number of sinks contemplated before he could estimate the cost of even the risers required. The fact that no such inquiry was made strongly indicates that plaintiff well knew slop sinks were contemplated as a part of the installation but intended to install the risers and nothing more because slop sinks were not expressly required in the plans and specifications before him.

However, plaintiff was not justified in relying wholly upon Exhibit D even though he received no other typical floor plan before submitting his proposal. The requirement for sink risers appearing in Exhibit F without any call for their location in the typical floor plan shown in Exhibit D was notice to him that the floor plan was in this respect incomplete. Furthermore, this floor plan bore date of April 5, 1925, while Exhibit F purports to be specifications of labor to be performed and materials to be furnished in the plumbing and gas fitting "in accordance with the accompanying drawings and this specification prepared by Phillip T. Drotts, Architect, April 10, 1925." Also, these specifications contain, among others, the following provisions:

## "GENERAL CONDITIONS

"Contractor for the Plumbing and Gas fitting is obligated and agrees to comply with all the general conditions of the Specifications of this building, as written in the specifications for the general work. A copy of same is on file in Architect's office, and one on file in Owner's office, and one on the job.

526

## "PLUMBING

"All the foregoing 'GENERAL CONDITIONS' stated at the beginning of this specification are expressly included in the following Plumbing and Gas Fitting work and are made a part of the conditions under which said work shall be executed."

The general specifications referred to in the above provisions and admitted in evidence as Exhibit 27 contained the following pertinent provisions:

"The drawings referred to in these specifications consist of a basement plan, a first floor plan, a typical floor plan, roof plan, four elevations, and the detail drawings.

"Should anything be omitted from the drawings and specifications which is necessary to a clear understanding of the work, or should any error appear either in the various instruments furnished or in the work done by other contractors affecting the work included in this specification, it shall be the duty of the contractor to notify the architect. . . .

"Should any dispute arise as to the true meaning of the drawings and this specification, the decision of the architect is to be final and binding. . . .

"Anything which is not shown on the drawings, but which is mentioned in the specifications or *vice versa*, or anything not expressly set forth in either, but which is reasonably implied, shall be furnished and performed the same as though specially shown or mentioned in both."

It is apparent from the foregoing that if plaintiff, with the above noted discrepancies in the plans and specifications admittedly before him, had exercised even the slight diligence and caution they suggested he would have been fully advised before submitting his proposal that the installation of slop sinks was required. However, without doing so he sent defendant his letter of acceptance agreeing to furnish the labor and material in accordance with the plans and specifications, with changes not pertinent to the contention here made, and further stating therein that "plumbing is to provide for the installation of the work in accordance with original specifications." By this agreement plaintiff bound himself to meet all the requirements in all of the plans and specifications read together and considered as a whole. [Kennedy v. Bowling, 319 Mo. 401, 413, 4 S. W. (2d) 438, and cases cited; 6 R. C. L. sec. 253, p. 867; 9 C. J. p. 709; 13 C. J. pp. 528, 530.] He was, therefore, bound by the call for slop sinks in the typical floor plan shown on Exhibit G even though he did not see this particular plan before sending defendant his letter of acceptance.

From the typical floor plan shown on Exhibit G the number, size and location of the slop sinks are easily ascertainable, and the fact

that slop sinks are so shown is indisputable evidence that their installation was required. It is of no consequence that they are not expressly required in the plumbing and heating specifications. This and other omissions were supplied by the last above quoted provision of the general specifications by which plaintiff was bound. The plans and specifications clearly called for the installation of slop sinks. No extrinsic facts were necessary or permissible to explain this unequivocal requirement, and the contract should not have been submitted to the jury for interpretation.

■ However, counsel for respondent further contends that defendant treated the slop sinks as "extras," ordered their installation as such, and was bound to pay for them accordingly. This claim is based on plaintiff's testimony that when advised by his foreman that defendant's foreman had a different set of plans he went to Mr. Jones (defendant's president) and had a conversation with him which was detailed at the trial as follows:

"Q. Just tell the jury, in your own words, what that conversation was? A. Well, I went down to Mr. Jones' office and I says 'Here, look here, your foreman has a different plan than mine and that plan is different; it shows some things that my plans do not show and neither are they called for in the specifications.' I took the specifications down there and we looked it over and he didn't seem to figure just why there was a difference there. We checked the plan over there and I showed him the difference between the two sets and difference between the specifications and the set that his foreman had on the job; he looked it over and he said he didn't know how it had occurred that they could not delay it a day, the men were out there hollering for these forms to be set so they could pour the concrete and he says 'We haven't got time to discuss it now; we have to go ahead and you go ahead and all I want is you to treat me right and do me a good job and I will pay for whatever it is; make a reasonable job, keep track of it and treat me right and I will treat you right.' "

Defendant's president testified that slop sinks were not mentioned in this conversation, but even if they were the conversation merely shows on plaintiff's part that he was asserting that the matters mentioned were not called for in his contract. Defendant endeavored to ascertain from the parts of the contract then before them what the facts were as to the truth of plaintiff's assertion that there were "many things" not called for in the contract. But not being able to do so in the limited time allowed (delay at this point in the building work being disastrous). defendant suggested that they go ahead, all he wanted was to be treated right, and on that condition he would pay for whatever were in fact extras. Not a word was said about the slop sinks or anything else being treated as extras and that defendant would pay for them as such regardless of whether or not they

528

were called for by the contract. How could defendant be "treated right" if he were called on to pay for as extras things included in the contract as a part of the contract price bid? Certainly the conversation in evidence does not show an agreement to pay for slop sinks as extras, and such an agreement if made would have been without consideration, plaintiff being already bound by the contract to furnish them.

Upon the whole record it is clear that defendant's peremptory instruction above set forth should have been given. The judgment was excessive by the allowance made plaintiff for slop sinks. The amount of this item was shown to be $1362.74. The judgment is affirmed on condition that within fifteen days *remittitur* be entered as of the date of the judgment for $1362.74, otherwise the judgment will stand reversed and the cause remanded. All concur, except *Hays, J.,* not voting, because not a member of the court at the time cause was submitted.