SHARP BROTHERS CONTRACTING COMPANY, a Corporation, Appellant,

v.

COMMERCIAL RESTORATION, INC., a Corporation, Respondent.

No. 23119.

Kansas City Court of Appeals.

Missouri.

April 4, 1960.

Harry P. Thompson, Jr., Thomas J. Leittem, Kansas City, for appellant.

Irving Kuraner, Kansas City, Kuraner, Freeman, Kuraner, Oberlander & Lamkin, Kansas City, of counsel, for respondent.

MAUGHMER, Commissioner.

We have here a jury waived case. Plaintiff claims damages based upon defendant's nonperformance under an offer or under a subcontract which plaintiff asserts defendant made and entered into with plaintiff. The petition contains three counts, each alleging entry into the contract, each claiming alternatively $8,000 damages and respectively seeking recovery for breach of the contract, under estoppel and unjust enrichment. Defendant by its answer denied generally. The court heard the evidence, took the cause under advisement and thereafter made and entered its findings of fact, conclusions of law and judgment for defendant. Plaintiff's after trial motions were overruled and its appeal timely perfected.

The notice of appeal was filed April 27, 1959, and plaintiff's petition asks $8,000 in damages. On appeals taken prior to January 1, 1960, our monetary jurisdiction limit is $7,500. Mo.Const. Art. V, Sec. 3, V.A.M.S.; Section 477.040, V.A.M.S. Therefore, we first determine if we have jurisdiction. In Beasley v. Athens, 365 Mo. 158, 277 S.W.2d 538, the court ruled: The petition is not conclusive; jurisdiction of the Supreme Court, a court of limited jurisdiction, must affirmatively appear; if

plaintiff's trial theory does not show more than $7,500 is involved, jurisdiction lies with the Court of Appeals—a court of general jurisdiction. Plaintiff's evidence in our case shows that its cost in doing the work was $6,301, which, after deduction of the $1,200 alleged contract price, leaves the utmost amount involved to be $5,101. Therefore, we hold that jurisdiction lies in this court.

Plaintiff, The Sharp Brothers Contracting Company, is a corporation engaged in the business of general contracting, with offices in Kansas City, Missouri. The defendant Commercial Restoration, Inc. is also a corporation, located in Kansas City, and does cement fininshing work.

Early in January, 1955, the City of Kansas City, Missouri, had prepared plans and specifications for extensive repairs, alterations and improvements for the overhaul facilities at the Mid-Continent International Airport. Sealed bids were to be submitted for the work. The bids were to be opened on January 18th. Defendant learned that plaintiff planned to bid on Contract No. 4, Engine Test Building, and under date of January 11, 1955, submitted to plaintiff the paper writing which finally resulted in this litigation. We set forth the pertinent parts thereof:

"Quotation from
Commercial Restoration
Incorporated

"Date January 11 — 1955

"Name of Job    T. W. A. Engine Test Building
"Location    Kansas City, Missouri

"We propose to furnish and install the above job, in accordance with the plans and specifications of the architect, unless otherwise noted under remarks.

"Finishing hand rubbed concrete inside and outside $1,200.00

"Remarks:

"Above quotations on our regular contract form will be mailed upon request.
"Prices quoted are subject to acceptance within 10 days from date. Thank you for the opportunity of quoting.

"W. S. Carter
"Commercial Restoration, Inc."

(The typed insertions in the above are underlined. The nonunderlined wording is on the printed form.)

---

By its letter of January 17, 1955, defendant advised plaintiff "Our quotation * * is based on the interpretation that the inside surfaces of the exhaust and intake stacks do not have to be hand rubbed. If these surfaces are to be finished, add $800.00." On January 18, 1955 the sealed bids were opened and plaintiff was awarded the general contract. However, on contracts for a city it is necessary that the City Council pass an ordinance formally awarding the contract before the successful bidder and contractor may proceed with the job. Such an ordinance was not passed covering this work until April 6, 1955.

On April 8th, plaintiff sent defendant a memorandum for signature and therein described the sub-job as follows: "Finishing hand rubbed concrete inside and outside based on the interpretation that the inside surfaces of the exhaust and intake stacks do not have to be hand rubbed. For the sum of $1,200.00 Dollars." Plaintiff's of-

fice copy of this memorandum was received in evidence and carried the notation "Void —Sub-Contract Written." Plaintiff prepared a written subcontract dated July 19, 1955, covering the proposal. Defendant neither signed nor acknowledged receipt of either the memorandum or the subcontract. Plaintiff's letter of August 5, 1955, to defendant expressed plaintiff's understanding that defendant was not going to perform the work.

The evidence indicates that Jack Seal, estimator for Sharp Brothers, called Commercial Restoration by telephone early in January and probably on the 17th. Mr. Seal indicated the specifications were not clear as to the exact amount of hand rubbing required, and he thought Commercial's bid was too low. That was the situation which prompted his call. Their conversation was just general on these subjects. Mr. Seal said he believed they used this particular bid in assembling the general over-all bid. Plaintiff's evidence, chiefly that of Mr. Don Sharp, president, was that it used its own workers in doing the cement finishing and hand rubbing required; that time card cost checks were kept and that the cost thereof was $6,301 or $5,101 in excess of the figure quoted by defendant.

Mr. Walter Scott Carter, president of Commercial, testified. He recalled more than one telephone conversation with Mr. Seal, plaintiff's estimator, prior to January 18th. All had to do with the amount of hand rubbing, patching and finishing that would be required. He said he had no further word from plaintiff until he received the memorandum of April 8th. The testimony also indicates that between January and April, Commercial had unsuccessfully endeavored to secure a subcontract on a Linwood school job from Sharp Brothers. This led to a somewhat strained relationship.

The court made the following pertinent Findings of Fact:

"1. Defendant's bid of January 11, 1955 (Plaintiff's Exhibit No. 1) was subject to acceptance within 10 days from that date.

"2. Plaintiff's employee, Jack Seal, did not accept the offer in his conversation with defendant on or before January 17, 1955.

"3. After the said conversation on or before January 17, 1955, no communication was made with respect to the said bid until April 8, 1955, when plaintiff sent defendant its purchase order No. 1403 (Plaintiff's Exhibit No. 3).

"4. Defendant's offer of January 11, 1955 was not accepted within 10 days from the date.

"5. There is no definite, uniform and known practice whereby the use of a bid of a subcontractor by a general contractor constitutes an acceptance of it."

Based upon these findings of fact the court concluded: That defendant's offer expired ten days after January 11, 1955; that custom or usage may not be employed to extend or otherwise vary the ten-day limitation; that the use of defendant's bid by plaintiff (if it was used) did not constitute an acceptance of the bid; that defendant's bid was not ambiguous, but on the contrary, was unambiguous, and judgment should be for the defendant.

In jury waived cases the statute (510.-310(4), V.A.M.S.) directs that: "The appellate court shall review the case upon both the law and the evidence as in suits of an equitable nature. The judgment shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." The decisions similarly admonish us. McCoy v. McCoy, 360 Mo. 199, 227 S.W.2d 698, 703; Trotter v. Trotter, Mo.Sup., 316 S.W.2d 482, 484.

On appeal plaintiff contends that defendant's offer remained open for a reasonable

time after the general contract was awarded; that even though defendant's written offer contained a ten-day limitation, equitable estoppel will forbid its enforcement; that the offer was irrevocable; that the general contract award to plaintiff legally resulted in an acceptance of defendant's offer; that the written offer was ambiguous as to time, and that the ten-day limitation was ambiguous in that it could not be in "accordance with the plans and specifications" and also be acted upon within ten days. Plaintiff also asserts that it communicated to defendant that it had been awarded the contract, and that defendant was low bidder on the subcontract, which it says resulted in a binding contract coming into existence. The court found against plaintiff on this latter factual assertion and we find no evidence of such communication until April 8th. Although Mr. Sharp said he talked with someone about the contract before April 8th, it was with an unidentified person and not competent evidence. Lastly, it is claimed that known practice and custom in the area resulted in binding defendant and constituted acceptance of the offer. Here again the court on the facts found against plaintiff and once more we cannot say such finding is erroneous.

■ It is clear that no actual contract as such ever arose from defendant's letter styled "Quotation." In addition to the plain statement "Prices quoted are subject to acceptance within 10 days from date", the letter stated: "Above quotations on our regular contract form will be mailed upon request", thereby implying, if not specifically declaring, it should not be construed as a contract. Plaintiff was not bound and there was no meeting of the minds as to just what work was covered as evidenced by the Seal-Carter conversations on this subject. Clearly the letter was just what its caption indicates; that is, a quotation, or what plaintiff calls it in the brief—an offer. We believe that each of the four findings of fact set forth above

are supported by the evidence and certainly are not "clearly erroneous."

It was stated in Sides v. Contemporary Homes, Inc., Mo.App., 311 S.W.2d 117, 120: "Whether there was a meeting of the minds is to be determined by what the parties said and did, and if the words and acts judged by a reasonable standard show an intention to agree to the matter in question, the agreement is established. Muegler v. Crosthwait, Mo.App., 179 S.W.2d 761 (4)."

In 17 C.J.S. Contracts § 328, pp. 779, 780, we find this language: "However, in order that an unexpressed term may be implied, the implication must arise from the language employed in the instrument or be indispensable to effectuate the intention of the parties. So there can be no implication as against the express terms of the contract, and the courts will be careful not to imply a term, where the subject thereof is completely covered by the contract, * *."

■ We are of the opinion that this declaration of principle as applied to a contract is likewise applicable to an offer. We quote further from 17 C.J.S. Contracts § 51, p. 399: "An offer comes to an end at the expiration of the time given for its acceptance, a limitation of time within which an offer is to run being equivalent to the withdrawal of the offer at the end of the time named. Where no time is fixed in the offer it expires at the end of a reasonable time."

12 Am.Jur. Contracts, par. 56, p. 547, states the same rule this way: "The proposer may limit the time for acceptance, since every person has the right to dictate the terms upon which he will contract. An offer which specifies a time for its duration terminates by the lapse of the time specified therein; the acceptance must take place within that time."

Plaintiff cites Northwestern Engineering Co. v. Ellerman, 69 S.D. 397, 10 N.W.2d 879, and in its brief, summarizes that case

as follows: "There the plaintiff was a general contractor who sued the defendant subcontractor in the trial court. Both had signed a contract stating that if the subcontractor made a bid and the general contractor used it, and the general contractor was awarded the general contract, then the subcontractor would perform." Those facts are greatly different and cover the circumstances specifically. In Drennan v. Star Paving Co., 51 Cal.2d 409, 333 P.2d 757, 758, cited by plaintiff defendant made a bid "late in the afternoon." Plaintiff was awarded the general contract that evening. Defendant's bid was low and the next day plaintiff stopped at defendant's office, where he was told defendant would not perform because—"They had made a mistake." There was no time limit incorporated in defendant's bid and plaintiff tried to accept it one day after it was made. Defendant was held liable but the court said, at page 759 of 333 P.2d: "Had defendant's bid expressly stated or clearly implied that it was revocable at any time before acceptance we would treat it accordingly." Neither of these two cases are really in point as our facts are different. The same may be said of numerous other cases to which our attention has been invited by plaintiff.

■■ It is a basic principle of law, we think, that a general contractor may, if he chooses, specify the conditions under which he will receive, accept and consider bids from interested subcontractors. Likewise, an offeror may submit a bid or quotation with a definite time limit for acceptance on it. We know of no usage or custom that will implant upon a bid or offer conditions different from the plain wording thereof.

We think the time limitation here was not ambiguous, doubtful or subject to a variety of interpretations. On the other hand, it was definite and therefore not susceptible of variance through extraneous explanation. We believe that the findings of fact entered by the court are supported by the evidence. Certainly after according due deference to the trial judge as to the credibility of the witnesses and giving proper weight to the admonishment that in a jury waived case the judgment shall not be set aside unless clearly erroneous, we should not overturn such findings. There is nothing in the factual situation here that would enable plaintiff to successfully invoke and recover on either equitable estoppel or unjust enrichment. Plaintiff has cited no authority so holding and we think it is unnecessary to review the legal principles and requirements, which are essential in such actions.

It is our opinion that the conclusions of law and judgment entered for the defendant logically follow in the wake of the findings of fact.

The judgment is affirmed.

SPERRY, C., concurs.

PER CURIAM.

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court.

HUNTER, P. J., and BROADDUS, J., concur.

CROSS, J., not participating.