**SAINT FRANCIS MEDICAL CENTER,**
Plaintiff–Respondent,

v.

**Britney WATKINS, f/k/a Britney
Carner, and Tyler Watkins,**
Defendants–Appellants.

**No. SD 32313.**

Missouri Court of Appeals,
Southern District,
Division Two.

Nov. 7, 2013.

Derrick S. Kirby, Doniphan, MO, for Appellant.

Daniel P. Finch, Cape Girardeau, MO, for Respondent.

DON E. BURRELL, J.

Tyler Watkins ("Husband") appeals the portion of a judgment entered against him and his wife, Britney Watkins, f/k/a Britney Carner ("Wife"), that found Husband personally liable for the payment of "medical services and supplies" provided to Wife by Saint Francis Medical Center ("Hospital"). Husband first challenges the evidence supporting what he asserts are two necessary elements of Hospital's claim: (1) that Wife's treatment was medically necessary; and (2) that Wife had no separate assets. Second, Husband claims the trial court abused its discretion in awarding attorney fees against him "because it violate[d] the American Rule in that no contract, statute or exceptional circumstances existed that would permit the award of attorneys' fees."

Because Hospital failed to present any evidence establishing the necessity of the medical services provided to Wife, the portions of the judgment relating to Husband are reversed.[1] The matter is remanded to the trial court to enter a judgment that finds in favor of Husband on Hospital's claims against him.

## Applicable Principles of Review

■ We will sustain the trial court's judgment in a bench-tried case "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." Rule 84.13(d);[2] *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). The evidence, and inferences that may reasonably be drawn from it, are viewed most favorably to the judgment, and we disregard all contrary evidence and inferences. *Houston v. Crider*, 317 S.W.3d 178, 183 (Mo.App.S.D.2010).

## Facts and Procedural Background

Husband and Wife did not personally appear at the August 2012 trial. Their attorney did appear on their behalf, and he stipulated "that Britney Watkins was formerly Britney Carner." Wife's answer to Hospital's interrogatory no. 2—stating that Husband and Wife were married on May 22, 2010—was treated as an admission. The trial court also received into evidence "three admission forms" that were attached to Hospital's amended petition.[3] The forms were each entitled "Con-

---

1. The judgment found in favor of Hospital against Wife based on the contract for payment Wife entered into when she signed Hospital's consent to treatment forms. Wife has not appealed the judgment, and the portions of it relating to her are affirmed.

2. Unless otherwise indicated, all rule references are to Missouri Court Rules (2013).

3. The interrogatory answers and the consent forms were not actually offered as numbered exhibits at trial; they were simply referred to by their content. The interrogatories were referenced generally when Hospital's counsel was trying to prove that the parties were married, and he specifically referred to the answer to interrogatory no. 2. Husband's counsel said he didn't "think [he had] an objection to the answers to interrogatories[,]" and the trial court replied, "All right. Then we'll go ahead and set that. I guess that particular response, is that to Interrogatory No. 2 as an admission that [Husband] and [Wife] were, in fact, married on May 22, 2010." Counsel for Hospital asked that the "three admission forms" which were "[a]ttached to the petition" be admitted into evidence and the trial court ruled that "[w]e'll show then all three of those admission forms admitted at this time."

sent for Treatment/Transport[,] Authorization for Release of Information and Payments[, and] Acknowledgement of Receipt Release of Liability Notice" ("consent form").

Each form was signed solely by Wife, and each provided for payment on the account "in accordance with [Hospital's] regular rates and charges for services and goods at the time rendered[,]" "interest at the maximum legal rate" on "[d]elinquent accounts[,]" and, if delinquent, for "all reasonable collection expenses, court costs and a reasonable attorney fee." Additional information gleaned from interrogatory answers and the consent forms will be addressed in our analysis of Hospital's responses to Husband's appeal.

Hospital also presented the testimony of one witness, Roberta Matlock, an "[a]ssistant manager in [Hospital's] business office" and custodian of Hospital's billing records. Ms. Matlock testified that she had worked for Hospital in various capacities "for 31 years[,]" and that, "on the average," the rates charged by Hospital were comparable to those of "other hospitals in the general geographical area[.]" She opined that the charges assessed to Wife were reasonable.

Ms. Matlock also confirmed the amounts remaining unpaid on Wife's invoices and the applicable dates of service. The parties stipulated that the unpaid portion of services rendered to Wife before Wife her marriage to Husband totaled $6,133.76, and an additional unpaid amount of $9,606.99 was added after the marriage.

Hospital's exhibits numbered 1–5, 7–8, 10, and 12 (each entitled "Itemized Billing Statement") were admitted into evidence at the end of Ms. Matlock's testimony. The bills associated with services rendered to Wife after her marriage to Husband were exhibits 10 and 12.

Exhibit 10 reflected individual code numbers, quantities, and pricing for the following entries, which are stated exactly as they appear under the heading "DESCRIPTION":

ELECTRODES BLUE DOT
POLYP TRAP
ANGIOCATH
SET 11540 PRIMARY PGBK
PAD GROUNDING ERBE
RECOVERY PER 1/2 HR.
CON SED >5YRS 1ST 30 MI
COLONSCOPY LEVEL 1
FENTANYL 100MCG/2ML AMP
DIPHENHYDRAMINE 50 MG/ML
MIDAZOLAM 5MG/5ML VIAL
0.9% SALINE 500ML

The charges for these items totaled $3,334.17. Ms. Matlock testified that one of the invoices, Exhibit 10, related to "a colonoscopy[,]" and she indicated that the charge would have been "made at or near the time the particular event took place," but she provided no information about the medical indication for the procedure.

Exhibit 12 reflected individual code numbers, quantities, and pricing for the following entries, which are again stated exactly as they appear under the heading "DESCRIPTION":

KIT FOR CT SCAN
OMNIPAQUE 350 50 ML (ORA
OMNIPAQUE 300 100ML
ANGIOCATH
SET 11538 PGBK IVEX 2 F
DRESSING TEGADERM 4x4 & 4
CLASS III ROOM
IV PUSH INITIAL
IV HYDRATION EA ADDL HR
LEVEL IV W/MODIFIER 25
ABDOMEN 3 VIEW (ACUTE AB
CT ABD/PEL W CONTRAST
SALINE FLUSH 10ML SYRIN

ONDANSETRON 4MG/2ML VIA
0.9% SALINE 1000ML
CHEMISTRY 12
CBC/AUTO DIFF

The charges for these items totaled $6,272.82.

On cross-examination, Ms. Matlock explained that the charge for a particular service came from "a charge sheet or a checklist" in the department rendering the service and that, "[n]ormally," it was a nurse who would check off the charges from a list to be applied in a particular case. The nurse would "know what services are rendered because they're either rendering the service or rendering it with the doctor." An employee in each department, known as a "poster[,]" would then input the charge information into the billing system.

The portion of the judgment relevant to the issue on appeal reads as follows:

> IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that [Hospital] have and recover of Defendants, in Count II of its petition, principal sum of $9,606.99, plus accrued interest in the amount of $1,285.32, less payments of $0.00, for a total Judgment of $10,892.31, plus attorney fees of $1,441.05 as to Defendant [Wife], for a total Judgment of $12,333.36 with interest to continue on the unpaid balance at the maximum statutory rate until said indebtedness is paid in full with costs taxed against [Husband and Wife].

This appeal timely followed the entry of the judgment.

## Analysis

Husband's first point asserts that Hospital "failed to offer any evidence that the medical treatment provided to [Wife] was necessary or that [Wife] had no separate assets." Because we find his argument regarding the lack of proof of medical necessity to have merit, we do not address the remainder of his argument.

■■■ Although Husband strongly urged at oral argument that the doctrine of necessaries is anachronistic and should be abolished, we are an error-correcting court, not a policy-making court, *see State v. Freeman,* 269 S.W.3d 422, 429 (Mo. banc 2008) (Wolff concurring opinion), and "[t]he common law doctrine of necessaries is the law in Missouri." *Medical Servs. Ass'n v. Perry,* 819 S.W.2d 82, 83 (Mo.App. W.D.1991). Historically, the doctrine required only a husband to pay the necessary expenses of his wife, but the doctrine is now applied in a gender-neutral fashion. *St Luke's Episcopal–Presbyterian Hosp. v. Underwood,* 957 S.W.2d 496, 499 (Mo.App. E.D.1997) (case reversed for new trial concerning wife's liability for husband's medical expenses). Because Husband was not a party to the contract embodied in the consent forms, the doctrine of necessaries requires Hospital to "establish that the services [provided to Wife] were necessary in order to hold [Husband] liable for payment for such services." *Id.*

Such evidence of medical necessity does not always have to be provided by a medical expert. In *Underwood,* a *prima facie* showing of medical necessity was based upon the patient-spouse's testimony at trial that he went to the hospital "with angina[,]" underwent surgery, and stayed in the hospital for a period of time. *Id.* In *Perry,* the husband testified that his wife had been receiving cancer treatment at one hospital, and she then continued to receive medical treatment at the plaintiff's facility until she was transferred back to the first hospital. 819 S.W.2d at 84. No such testimony was provided by Husband or Wife in the instant case.

Here, it was established that Wife twice consented to treatment at Hospital after she married Husband. From Ms. Matlock's testimony, the trial court could reasonably infer that the items represented by Hospital's charges were provided to or used in service of Wife. But nothing in Ms. Matlock's testimony would allow the fact-finder to determine that each service or item provided to Wife was medically necessary.

Hospital argues that our holding in *Lester E. Cox Med. Ctrs. v. Richards*, 252 S.W.3d 236 (Mo.App.S.D.2008) (affirming a judgment against the spouse of the patient who received medical treatment), approved the type of evidence of necessity Hospital offered here. The argument fails because present in that case—and absent here—was "an affidavit executed by [the patient-husband's] treating physician" pursuant to section 490.525, RSMo Cum.Supp.2004, which allowed proof by affidavit that the medical services rendered were reasonable and necessary. *Id.* at 239. Although that affidavit was received into evidence at trial, it was not deposited with this court on appeal, rendering unreviewable the appellants' claim that the affidavit was insufficient to prove medical necessity. *Id.* at 241. The case does not support Husband's claim that medical bills constitute substantial evidence of medical necessity.

Hospital argues that its "itemized billing statements admitted into evidence demonstrate on their face that the procedures performed are necessary and could only be administered in a hospital setting at the direction of a licensed medical professional using equipment and technology that only a hospital can provide." We disagree, and a hypothetical may demonstrate why the bills, "on their face," cannot prove necessity, at least under the circumstances present here. The record is devoid of any evidence about why Wife was hospitalized. Ms. Matlock testified that one of Wife's bills indicated that a colonoscopy was performed on her. But if Wife had been admitted because of a serious laceration to her hand, the fact that she was billed for a colonoscopy would not constitute proof that the colonoscopy was medically necessary to either diagnose or treat her wound.

Hospital next points to Wife's answer to Hospital's interrogatory No. 3 as proof that the services provided to Wife were medically necessary. That answer, at least according to Hospital's brief,[4] was:

> I may have received medical treatment at [Hospital] when I was a child. I also may have received medical treatment at [Hospital] in April of 2009. The dates and reasons for such treatment would presumably be contained in my medical records, of which [Hospital] has possession.

This answer does not admit that the treatment Wife "may have received" was medically necessary, and Hospital did not attempt to offer any of Wife's medical records as evidence at trial. The interrogatory answer also addresses time periods prior to Wife's marriage to Husband.

Finally, Hospital points to the following language contained in the consent forms executed by Wife:

> The undersigned hereby consents to emergency and/or standard hospital treatment and other routine medical and nursing procedures. I understand may [sic] include, but not limited to, x-ray procedures, local anesthesia, and laboratory tests, measurements and procedures as well as intravenous fluids and other modes of medications and nutritional administration, ordered specifical-

---

4. Hospital cites to "Plaintiff's Exhibit 13" for this interrogatory answer, but the transcript does not contain any reference to an Exhibit 13.

ly by a physician or customarily provided under medical supervision.

This provision also does nothing to establish the medical necessity of the services Wife actually received.

Point I is granted, and it is dispositive.[5] The portions of the judgment related to Husband are reversed. The matter is remanded to the trial court, which is directed to enter a judgment in favor of Husband on Hospital's claims against him.

JEFFREY W. BATES, P.J. and MARY W. SHEFFIELD, J., CONCUR.

---

**5.** As our resolution of Point I requires the reversal of any damages awarded against Husband, Point II is moot.