Stephanie **WILDER**, Plaintiff-Respondent,

v.

**JOHN YOUNGBLOOD MOTORS, INC.,** d/b/a Youngblood Nissan, **Defendant-Appellant.**

**No. SD 35037**

Missouri Court of Appeals, Southern District, Division Two.

Filed: November 27, 2017

Appellant's Attorneys: Michael A. Childs, of Overland Park, KS and Craig R. Oliver, of Springfield, MO.

Respondent's Attorneys: Craig R. Heidemann and Donald M. Brown, of Bolivar, MO and Nickolas W. Allen, of Thayer, MO.

WILLIAM W. FRANCIS, JR., J.

John Youngblood Motors, Inc., d/b/a Youngblood Nissan ("Youngblood") challenges an Order denying its motion to compel arbitration. In two points on appeal, Youngblood argues that the trial court erred in denying its motion to compel arbitration because: (1) the arbitration agreement was supported by sufficient consideration, and (2) federal law and arbitration policy require the enforcement of the arbitration agreement. Finding no merit to either point, we affirm the judgment of the trial court.

## Factual and Procedural History

Stephanie Wilder ("Wilder") was hired by Youngblood on January 29, 2015, with her first day of work being February 2, 2015. On February 2, 2015, Wilder and a representative of Youngblood signed an "Agreement for Binding Arbitration" ("Arbitration Agreement").

The Arbitration Agreement states, in relevant part, that:

> This Agreement to submit matters to binding arbitration is a condition of [Wilder]'s at-will employment with [Youngblood], [Youngblood]'s employment of [Wilder], [Wilder]'s receipt of the compensation now and hereafter paid to [Wilder] by [Youngblood], [Wilder],

[Youngblood] and Co-Employee (collectively "Parties") agree:

> The Parties agree pursuant to this Agreement that final and binding arbitration is the sole and exclusive means to resolve any and or all claims or disputes between each other, and they each waive the right to resolve any claim or dispute by filing a lawsuit or other civil action or proceeding against each other, including waiving the right to a jury trial or court trial unless otherwise provided herein.

> . . . .

> This Agreement does not cover [Wilder]'s claims, rights or causes of action for unemployment benefits, workers' compensation benefits, and [Youngblood]'s claims for breach of trust violations, use or dissemination of confidential information, unfair competition, disclosure or use of trade secrets for which [Youngblood] may seek all appropriate relief (including, but not limited to injunctive or equitable relief) from a court of competent jurisdiction.

The Arbitration Agreement then describes the claims to be submitted to binding and final arbitration.

Wilder held various positions during her employment, one being the Nissan Owner Loyalty Manager. Youngblood terminated Wilder on September 20, 2016.

On February 14, 2017, Wilder filed a "Petition" asserting a claim for wrongful termination, in violation of Missouri's public policy, for reporting what was alleged to be wire fraud by Youngblood.

Thereafter, Youngblood filed an "Answer and Motion to Compel Arbitration" asserting that matters covered by the Arbitration Agreement included wrongful termination, wrongful demotion, and whis-

tle·blowing. On March 22, 2017,[1] Youngblood filed a "Demand for Arbitration" with the American Arbitration Association on the claims asserted by Wilder.

Wilder filed suggestions in opposition to Youngblood's motion to compel arbitration arguing that the Arbitration Agreement "is unsupported by any consideration, and is, therefore, invalid because [Wilder]'s employment relationship with [Youngblood] was 'at-will', and the agreement lacks mutuality of obligation." Wilder also argued that the Arbitration Agreement was "unconscionable" because she was pressured to sign the Arbitration Agreement without sufficient time to fully read and understand the terms of the Arbitration Agreement.[2] Youngblood filed a response to Wilder's suggestions in opposition to the motion to compel arbitration, with Wilder then filing a sur-reply.

On June 8, 2017, a hearing was held on Youngblood's motion to compel arbitration. The trial court took the matter under advisement and issued its Order on June 21, 2017. In its Order, the trial court found that "at-will employment, in and of itself, does not provide consideration for this arbitration agreement." In addition, the trial court found that Youngblood was:

> exempt from arbitrating certain claims where Wilder would be required to arbitrate those same claims. This exception allows Youngblood to avoid arbitrating the claims it is most likely to bring against Wilder. At the same time, Wilder would be required to arbitrate all

legally arbitrable claims she may have against Youngblood. Therefore, the arbitration agreement lacks a mutuality of promise and is devoid of consideration.

The trial court concluded that Youngblood "failed to meet its burden of proving the existence of a validly formed arbitration agreement[,]" and overruled Youngblood's motion to compel arbitration. This appeal followed.

In two points on appeal, Youngblood asserts:

I. THE TRIAL COURT ERRED IN REFUSING TO GRANT APPELLANT'S MOTION TO COMPEL ARBITRATION OF THE DISPUTES BETWEEN APPELLANT YOUNGBLOOD AND RESPONDENT WILDER, BECAUSE THE TRIAL COURT WAS REQUIRED TO DO SO UNDER *9 U.S.C. § 3, 9 U.S.C. § 4, § 435.355*.1 AND *§ 435.355.4, RSMO.,* GIVEN THE AGREEMENT FOR BINDING ARBITRATION EXECUTED BY THE PARTIES COVERED WILDER'S CLAIMS AND IT WAS ENFORCEABLE, IN THAT THE AGREEMENT FOR BINDING ARBITRATION WAS SUPPORTED BY CONSIDERATION.

II. THE TRIAL COURT ERRED IN REFUSING TO GRANT APPELLANT'S MOTION TO COMPEL ARBITRATION OF THE DISPUTES BETWEEN APPELLANT YOUNGBLOOD AND RESPONDENT WILDER, BECAUSE THE TRIAL

---

1. The date on this document is "March 22, 2007," but we believe this to be a scrivener's error and use the corrected date above.

2. Specifically, Wilder asserts that Youngblood's human resource representative gave to Wilder an insurance questionnaire, a payment plan, a waiver of liability while driving company cars, and the employee handbook in addition to the Arbitration Agreement. Wilder asserted the representative told her she had to sign the documents as written in order to continue her employment, and she was not given sufficient time to read all the documents, but instead the representative pointed to where in the documents Wilder needed to sign and was told they would review the documents at a later time. Wilder had approximately 15 minutes to look at and sign all of the documents.

COURT WAS REQUIRED TO DO SO UNDER FEDERAL POLICY EXPRESSED IN 9 U.S.C.2 et. seq., GIVEN THE ·AGREEMENT FOR ·BINDING ARBITRATION WAS ENFORCEABLE BASED UPON AT WILL EMPLOYMENT, IN THAT PROVIDING AT WILL EMPLOYMENT AS SUFFICIENT CONSIDERATION IN SOME, EMPLOYMENT AGREEMENTS, BUT NOT FOR AN ARBITRATION AGREEMENT, VIOLATES FEDERAL POLICY BY IMPERMISSABLY [SIC] INTERFERRING [SIC] WITH ITS POLICY FAVORING ARBITRATION AGREEMENTS. ·

### Standard of Review

Whether arbitration can be compelled under the terms of an employment agreement is a question of contract law. that we review de novo. Generally, when faced with a motion to compel arbitration, we must consider three factors: first, whether a valid arbitration agreement exists; second, whether the specific dispute falls within the scope of the agreement; and third, whether the agreement is subject to revocation under applicable principles of contract law. The party seeking to compel arbitration has the burden of proving the existence of a valid and enforceable arbitration agreement.

*Jimenez v. Cintas Corp.*, 475 S.W.3d 679, 683 (Mo. App. E.D. 2015).

### Analysis

#### *Appealable Order*

 As a preliminary matter, we note that this appeal arises from an Order de-

nying Youngblood's motion to compel arbitration. As a general rule, "a final judgment is a prerequisite to appellate review." *Sanford v. CenturyTel of Missouri, LLC*, 490 S.W.3d 717, 719 (Mo. banc 2016) (internal quotation and citation omitted). However, an exception to this rule is that "[a]n order *denying*·a motion to compel arbitration is subject to immediate interlocutory appeal under § 435.440, RSMo." [3] *State ex rel. Alst v. Harrell*, 528 S.W.3d 442, 445 (Mo. App. W.D. 2017) (emphasis in original). As such, we have authority to review the trial court's order denying Youngblood's motion to compel arbitration.

#### *Point I: Lack of Mutual Consideration as to the Arbitration Agreement*

 In its first point, Youngblood argues that the trial court erred in denying its motion to compel arbitration because the Arbitration Agreement at issue was properly supported by mutual consideration.

The Federal Arbitration Act (FAA), *9 U.S.C. § 1 et seq. (2006)*, governs the applicability and enforceability of arbitration agreements in all contracts involving interstate commerce. The Missouri Uniform Arbitration Act (MUAA), *§ 435.350 et seq.*, governs those Missouri arbitration matters not preempted by the FAA. The MUAA was fashioned after the Federal Arbitration Act, and the FAA and Missouri's Arbitration Act are substantially similar.

In determining whether an arbitration agreement is valid under the FAA, this

---

**3.** By contrast, "[o]rders *granting* motions to compel arbitration are not appealable.... Instead, a writ of mandamus is an appropriate mechanism to review whether a motion to compel arbitration was appropriately sustained." *State ex rel. Alst v. Harrell*, 528

S.W.3d 442, 445 (Mo. App. W.D. 2017) (internal quotation and citation omitted) (emphasis in original).

All references to statutes are to RSMo 2016, unless otherwise indicated. ··

Court is guided by the United States Supreme Court's decision in *AT & T Mobility LLC v. Concepcion*, 563 U.S. 333, 131 S.Ct. 1740, 1746, 1750, 179 L.Ed.2d 742 (2011), as interpreted and applied by this Court in *Brewer v. Missouri Title Loans*, 364 S.W.3d 486 (Mo. banc 2012), and in *Robinson v. Title Lenders, Inc.*, 364 S.W.3d 505 (Mo. banc 2012).

In *Concepcion* the United States Supreme Court interpreted the provision of the FAA that makes arbitration agreements 'valid, irrevocable, and enforceable, *save upon* such grounds as exist at law or in equity for the revocation of any contract,' *9 U.S.C. § 2*. *Concepcion* held that this provision allows arbitration agreements 'to be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue.' *Concepcion*, 131 S.Ct. at 1746 (internal quotations omitted).

In *Brewer* and *Robinson*, this Court reaffirmed that *Concepcion* does not diminish a trial court's broad authority to evaluate the validity and enforceability of arbitration agreements when considering whether to grant or overrule a motion to compel arbitration. Rather, this Court held, *Concepcion* 'permits state courts to apply state law defenses to the formation of the particular contract at issue.' *Brewer*, 364 S.W.3d at 492.

'As such, arbitration agreements are tested through a lens of ordinary state-law principles that govern contracts, and consideration is given to whether the arbitration agreement is improper in light of generally applicable contract defenses.' *Robinson*, 364 S.W.3d at 515. This means that a Missouri court can declare an arbitration agreement 'unenforceable if a generally applicable contract defense, such as fraud, duress, or unconscionability, applies to concerns raised about the agreement.' *Id.*

***Eaton v. CMH Homes, Inc.***, 461 S.W.3d 426, 431–32 (Mo. banc 2015) (internal quotations and citations omitted) (internal footnote omitted) (emphasis in original). This is to say, "Missouri contract law applies to determine whether the parties have entered a valid agreement to arbitrate." *Id.* at 431.

Under Missouri law, "[t]he essential elements of any contract, including one for arbitration, are offer, acceptance, and bargained for consideration." ***Stubblefield v. Best Cars KC, Inc.***, 506 S.W.3d 377, 381 (Mo. App. W.D. 2016) (internal quotation and citation omitted). An at-will employment relationship, as here, is not independently sufficient consideration to support an arbitration agreement; this is so because "terms and conditions of at-will employment are unilaterally imposed on employees, so they are not enforceable at law as contractual duties[.]" *Jimenez*, 475 S.W.3d at 685 (internal quotation and citation omitted).[4] This is the case regardless of whether such at-will employment is characterized as "new, future, or continued." *Id.* (internal quotation and citation omitted).

In the trial court's Order denying Youngblood's motion to compel arbitration, the trial court found that the Arbitration Agreement was unenforceable based on a

---

4. "[T]he fundamental component of the at-will employment relationship—the ability to quit or be fired at any[ ]time for any reason[,]" *Frye v. Speedway Chevrolet Cadillac*, 321 S.W.3d 429, 438 (Mo. App. W.D. 2010), does not create a legally sufficient obligation on either party to the at-will employment relationship to create consideration.

lack of mutual consideration. Correctly finding that the at-will employment relationship in this matter would be insufficient to clothe the Arbitration Agreement in consideration, *Jimenez*, 475 S.W.3d at 685, the trial court looked to whether there was "mutuality of obligation" (elsewhere styled "mutuality of contract") sufficient to support the Arbitration Agreement. *See, id.* at 686.

■■ In the absence of other consideration, mutuality of contract may suffice: "[m]utuality of contract means that an obligation rests upon each party to do or permit to be done something in consideration of the act or promise of the other; that is, neither party is bound unless both are bound." *Eaton*, 461 S.W.3d at 433 (internal quotation and citation omitted).

■■ Finding lack of mutuality, the trial court relied on a portion of the Arbitration Agreement wherein the agreement purported to separately limit the scope of arbitrable issues for each party:

> This Agreement does not cover Employee's claims, rights or causes of action for *unemployment benefits, workers' compensation benefits*, and Employer's claims for *breach of trust violations, use or dissemination of confidential information, unfair competition, disclosure or use of trade secrets* for which the Employer may seek all appropriate relief (including, but not limited to injunctive or equitable relief) from a court of competent jurisdiction.

(Emphasis added).

■■ We agree with the trial court. Youngblood's promise to exempt from arbitration Wilder's claims for "unemployment benefits" and "workers' compensa-

tion benefits" is not consideration: "[t]he legislature has vested exclusive jurisdiction for these types of claims with specialized administrative tribunals, and these types of claims cannot be arbitrated as a matter of law." *Jimenez*, 475 S.W.3d at 688 n.6 (internal quotation and citation omitted).

By contrast, the provision exempts Youngblood from arbitrating "claims" for breach of trust, use or dissemination of confidential information, unfair competition, disclosure, or use of trade secrets. For "claims" about these matters, Youngblood may seek "all appropriate relief ... from a court of competent jurisdiction." However, for these same claims, Wilder is not free to seek "all appropriate relief," and is bound to proceed through arbitration.

Youngblood contends that the Arbitration Agreement provides consideration to Wilder because the agreement requires Youngblood to "give[ ] up any right to go to court against Wilder over disputes like negligence[,] property damage[,] conversion[,] fraud[,] malicious prosecution[,] [and] defamation[.]" However, Youngblood's right to seek "all appropriate relief," "[ ]including, but not limited to injunctive or equitable relief[ ]," for the litany of "claims" related above, imputes Youngblood's discretion as to what causes of action might relate to such "claims" and associated "appropriate relief." Youngblood's bare allegation that a cause of action arises out of, or relates to one of the descriptive invocations in the exemption provision is arguably sufficient to render such matter exempted from arbitration for Youngblood. *See, Jimenez*, 475 S.W.3d at 688.[5]

---

5. The reasoning of our Eastern District in *Jimenez*, 475 S.W.3d at 688, is instructive: Equally critical to resolution of this issue is that the plain language of Section 4 allows

Cintas to file "any claims for injunctive relief *under any applicable law* arising from the same facts or circumstances as any threatened or actual violation of Employ-

■ Youngblood is exempted from arbitrating all those causes of action most likely to arise in the course of its at-will employment relationship with Wilder, as well as those it can passably shoehorn into the descriptive invocations of the exemption provision. Wilder is not exempted from arbitrating those same claims, and must in fact arbitrate all matters except those which cannot be arbitrated as a matter of law. Where, as here, "the practical effect of an arbitration agreement [is to] bind[ ] only one of the parties to arbitration, it lacks mutuality of promise, and is devoid of consideration." *Id.*

■ Youngblood directs this Court to the recent case of *Eaton*, 461 S.W.3d at 426, decided by our Supreme Court, suggesting that *Eaton* "overruled, or at least modified," *Jimenez*. We are unpersuaded. We presume, absent a contrary showing, that a decision has not been overruled *sub silentio*. *State v. Honeycutt*, 421 S.W.3d 410, 422 (Mo. banc 2013). This presumption arises, at least in substantive part, from the fact that "the maxim of *stare decisis* applies only to decisions on points arising and decided in causes and does not extend to mere implications from issues actually decided." *Id.* (internal quotation and citation omitted) (emphasis added).

In *Eaton*, the Supreme Court reviewed whether an arbitration agreement was unconscionable, and therefore unenforceable. 461 S.W.3d at 432. In that case, buyer purchased a manufactured home from seller, and the parties memorialized their understanding and sale through a contract with an arbitration provision. Buyer remitted funds equal to the purchase price to seller, and seller provided the manufac-

tured home to buyer. Thereafter, buyer discovered defects in the manufactured home, and brought suit against seller in court; seller moved to compel arbitration based on the contract. Buyer, contesting the enforceability of the arbitration agreement, alleged the:

> arbitration agreement in his contract with [seller] is unconscionable and unenforceable because it obligates him to arbitrate all disputes with [seller], while [seller] is not obligated to arbitrate disputes with him 'to foreclose upon any collateral, to obtain a monetary judgment or to enforce the security agreement.'

*Eaton*, 461 S.W.3d at 433.

In addressing buyer's argument, the Supreme Court "clarifi[ed] that a lack of mutuality of the obligation to arbitrate is one of the relevant factors a court will consider, along with the other terms of the contract, in *determining whether the agreement to arbitrate otherwise is unconscionable.*" *Id.* at 429 (emphasis added). The Supreme Court, relying on its prior decision in *State ex rel. Vincent v. Schneider*, 194 S.W.3d 853, 858-59 (Mo. banc 2006), found that in the context of unconscionability determinations, "as long as the contract as a whole meets the consideration requirement, an arbitration clause in the contract will not be invalidated for a lack of mutuality of the obligation to arbitrate[.]" *Id.* at 433. In *Eaton*, the Supreme Court found "[b]oth parties exchanged consideration for the entire contract[,]" in that "[buyer] paid the purchase price and [seller] provided [buyer] with the home.... The lack of mutuality as to the arbitration agreement does not *itself* inval-

---

ee's obligations ... in this Section 4.' This expansive clause arguably renders illusory Cintas's promise to arbitrate, by permitting Cintas to seek redress in the courts based upon its bare allegation that such claims are tied to Section 4's Non–Compete Provisions. Cintas may litigate at its discretion, while Jimenez is bound to arbitrate all of her legally arbitrable claims.
(Emphasis in original).

idate *that* arbitration agreement[ ]" on the basis of unconscionability. *Id.* at 434 (emphasis added).

Here, for the reasons discussed *supra*, the "entire contract," or "the whole agreement," was the Arbitration Agreement. Unlike *Eaton*, there is no other consideration to consider except what is contained in the Arbitration Agreement itself—further, the challenge is not to *unconscionability* on the basis of lack of mutuality of obligation, but as to mutual consideration sufficient to support contract formation. *Eaton* only addressed mutuality of obligation in the context of unconscionability, where "mutuality of the obligation to arbitrate is *one* of the relevant factors a court will consider[.]" *Id.* at 429 (emphasis added). We presume that *Jimenez* was not overruled *sub silentio* by *Eaton*, as "the maxim of *stare decisis* applies only to decisions on points arising and decided in causes and does not extend to mere implications from issues actually decided." *Honeycutt*, 421 S.W.3d at 422 (emphasis added).

■ Youngblood further argues that there is consideration because the Arbitration Agreement mandated that Youngblood "pay the significant costs of all the administrative fees and arbitrator's fees in the event it demanded arbitration. This is not anything [Youngblood] was obliged to do or promise." While there are terms in the Arbitration Agreement consistent with these representations, those terms are obviated by a provision following closely thereafter, which indicates that the agreement as to cost-bearing is not actually controlling—rather, the arbitrator is to award costs and attorney's fees to the prevailing party to the extent permitted by law.

■ Youngblood directs this Court to no authority supporting the proposition that an agreement to pay arbitration costs,

later obviated by a provision that costs are to be awarded by the arbitrator, is sufficient to constitute consideration. Even in *de novo* review, "[t]he judgment is presumed correct, and the appellant bears the burden of proving it erroneous," *Denny v. Regions Bank*, 527 S.W.3d 920, 924-25 (Mo. App. S.D. 2017) (internal quotation and citation omitted). As such, this argument is unavailing.

■ Youngblood also argues that there was consideration because "Wilder's job with [Youngblood] was conditioned on signing" the Arbitration Agreement, citing *Coffman Industries, Inc. v. Gorman-Taber Co.*, 521 S.W.2d 763 (Mo. App. K.C.D. 1975) in support. *Coffman* dealt with consideration in the context of a unilateral contract. *Id.* at 769-72. At-will employment, of the kind in the present matter, implicates a bilateral contract. *Baker v. Bristol Care, Inc.*, 450 S.W.3d 770, 777 (Mo. banc 2014). Further, an at-will employment relationship is not independently sufficient consideration to support an arbitration agreement, regardless of whether such at-will employment is characterized as "new, future, or continued." *Jimenez*, 475 S.W.3d at 685 (internal quotation and citation omitted). As a result, Youngblood's argument on this issue must fail.

■ Youngblood finally argues that there was consideration because Wilder worked for Youngblood for over a year and a half, and did not object to the Arbitration Agreement. Accepting payment for her work, Youngblood argues, is sufficient consideration for the Arbitration Agreement. In support, Youngblood directs this Court to *Computer Sales International, Inc. v. Collins*, 723 S.W.2d 450 (Mo. App. E.D. 1986), which held that a continued term of employment and pay for work performed was sufficient consideration, under the

facts of that case, for a restrictive covenant not to compete. *Id.* at 452-53.

However, as Wilder's brief correctly points out, our courts have held that agreements to arbitrate and restrictive covenants not to compete are fundamentally different, and therefore enforced differently. Covenants not to compete "are not true creatures of contract law, but are more about equity . . . even in cases where there is a formal employment arrangement." *Morrow v. Hallmark Cards, Inc.*, 273 S.W.3d 15, 28 (Mo. App. W.D. 2008). As such, "[t]he ordinary rules of contractual construction and enforcement are not necessarily applicable to non-compete agreements." *Id.* (internal quotation and citation omitted). "Historically, even in the absence of an express covenant, a former employer could maintain an action to restrain a former employee's unfair competitive use of an advantage gained from the employer." *Id.*

The *Morrow* court explained:

The notion that there was 'consideration' for the restrictive covenant in the employer's provision of 'continued employment' was, to be precise, based on recognition of the practical reality that by hiring the employee, the employer was exposing itself to the risks of the employee's access to protectable information and contacts (including customer relationships) in which the employer had invested substantial capital. Thus, it would be more accurate to say that the justification for the covenant (the 'consideration') was not the continued employment *per se*, but rather the employer's allowing the employee (by virtue of the employment) to have *continued access* to the protectable assets and relationships. Thus, it is, we suggest, merely a reductionism, and not precisely accurate, to say that the 'consideration' was 'continued employment.'

In any event, if we were to apply here the judicial approach ordinarily applied to covenants not to compete, we would regard the arbitration program as presumptively invalid to the extent that it is anything more than a term of employment (ending when the employment terminates), until [employer] had demonstrated a legitimately protectable business interest served by precluding access to the courts by former employees. [Employer] has not asked that we take that approach, and [employer] does not attempt to make such a showing of a protectable business interest. [Employer] instead relies only on the false premise that the arbitration program is an enforceable legal contract, with the consideration being the provision of 'continuing employment.'

For these reasons, we believe it is a mistake to think that the judicial approach to enforcement of a covenant not to compete is comparable to enforcement of an employer-dictated condition of continued employment requiring the employee to arbitrate claims against the employer.

*Id.* at 28–29. We agree with the well-reasoned analysis in *Morrow*, and reject Youngblood's argument.

There was no sufficient mutual consideration in the Arbitration Agreement. The trial court did not err in rejecting Youngblood's motion to compel arbitration. Point I is denied.

### Point II: Federal Policy Favoring Arbitration Agreements

In its second point, Youngblood argues that the trial court's finding that employment at-will was "sufficient consideration in some employment agreements, but not for an arbitration agreement, violates federal policy."

Youngblood suggests that "Missouri's approach to ... at-will employment ... has disproportionately led to its acceptance for non-arbitration provisions, but its rejection in the context of arbitration provisions." Youngblood then directs this Court to a number of Missouri appellate court decisions, indicating that such cases have been wrongly decided. As remedy, Youngblood suggests we change the law.

▬▬ . Assuming, without deciding, that the cases Youngblood cites stand for the propositions it posits, Youngblood's argument is nevertheless unavailing. "[W]e are an error-correcting court, not a policy making court[.]" *Saint Francis Medical Center v. Watkins*, 413 S.W.3d 354, 357 (Mo. App. S.D. 2013).[6] An argument, as Youngblood's, that the law is one way but should be another, is not proper before this Court. Point II is denied.

The Order of the trial court rejecting Youngblood's motion to compel arbitration is affirmed.

JEFFREY W. BATES, J.—Concurs

DANIEL E. SCOTT, J.—Concurs in Result in Separate Opinion

DANIEL E. SCOTT, J., concurring.

I share Judge Odenwald's view that offers of new at-will employment generally constitute contractual consideration, and that *Jimenez* errs in holding otherwise.[1] As he noted, *Jimenez* is the only Missouri case to deem offers of new at-will employment too insubstantial to contractually support arbitration agreements (or by extension, other job-connected agreements, commitments, or promises made by the new hire).[2] *Jimenez* seems to view at-will employment, by nature, as no more than a "moment-by-moment" voluntary trade of labor for pay or its expectation.[3] Because either party can end that relationship at any time, neither the job itself nor its offer or acceptance is valuable enough—to either party, as a matter of law, regardless of the job's merits—to contractually enforce each other's conscionable hiring-related agreements. At least this appears to be the reasoning; *Jimenez* never explains its rationale specifically.

Judge Odenwald's explanation of how *Jimenez* got this wrong also fits this case. Youngblood had no obligation to hire Wilder. She had no right to work for Youngblood. In hiring Wilder, Youngblood gave her something it did not legally have to give, while she got something she wanted but had no legal right to claim. This voluntary exchange was classic contractual consideration for the parties' concomitant

---

**6.** As our Supreme Court has explained, "appeals that lie initially with the court of appeals are lodged there with the understanding that the court of appeals is an error-correcting court. Such cases can be transferred to [the supreme court] because [it] is a law-declaring court." *State v. Freeman*, 269 S.W.3d 422, 429 (Mo. banc 2008) (Wolff, J., concurring) (internal quotation and citation omitted).

**1.** *Jimenez*, 475 S.W.3d at 689-90 (Odenwald, J., concurring in result). I am no fan of arbitration agreements of the types and in the situations there or here, but our supreme court allows them, even if one-sided toward the employer, when supported by consideration and not otherwise unconscionable (or any unconscionability can be severed). *See Eaton v. CMH Homes*, 461 S.W.3d 426, 433-34 (Mo. banc 2015).

**2.** "At will" being a two-way street, query whether a new hire's *acceptance* of at-will employment is equally inadequate to enforce an employer's recruiting promises. For example, is an employer similarly excused from paying a promised new-hire bonus if, and just because, the job is at-will?

**3.** See *Morrow v. Hallmark Cards*, 273 S.W.3d 15, 26 (Mo. App. 2008).

agreement to arbitrate future employment disputes.

*Jimenez* really does not explain why such "textbook" consideration should not count here. As noted, the court seemed to view at-will employment or offers as inherently of no value, regardless how desirable the job might be or how badly the employee and employer wanted each other. Yet persons seek, compete for, and value jobs (and may even prefer those at-will) for many reasons—opportunities for mentoring, training, or advancement; to gain experience before moving on; to build a resume; work environment; job flexibility; a superior or increased salary; benefits; a fresh start in a new field; the chance to work with a respected firm; on and on.

To declare such opportunities and other job-related benefits of no worth when they grow out of a voluntary relationship is to misunderstand the value of gainful employment. Missouri and its communities spend millions incenting employers to create at-will jobs. It is basic economics that Wilder valued the at-will job she sought and accepted more than any rights she gave up under the arbitration agreement.

A last example. My friend worked 37 years at the same job. It and church were where he could comfortably interact with others. Then his workplace burned and closed, and he was among dozens unemployed with little hope for open-market work. In time, moved by compassion ("we like to help people with challenges"), a retailer effectively made and offered a part-time position for my friend. He'd need to complete the standard job application and paperwork, and did so with assistance, including an arbitration agreement as I recall. Theorists may debate how much my friend should be bound by terms he could not read himself and might never fully grasp. But no one can fairly deny that value has been exchanged, at potential difficulty and risk for the company, even though the company can, and eventually still may, conclude that its try simply won't work.

Judge Odenwald was right. *Jimenez* incorrectly disqualifies offers of new at-will employment as consideration to support the arbitration agreements there and here. That said, I cannot convict the trial court of error. I disagree with *Jimenez*, but it was and remains clear appellate authority for the judgment now before us, which compels me to concur in the result.