

# Missouri Court of Appeals
## Southern District

### In Division

PRESLEY KARLIN, )
)
      Plaintiff-Respondent, )
)
      v. ) No. SD37699
)
UATP SPRINGFIELD, LLC d/b/a ) **Filed: February 20, 2024**
URBAN AIR SPRINGFIELD, )
)
      Defendant-Appellant. )

### APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

The Honorable Michael J. Cordonnier, Judge

### **AFFIRMED**

UATP Springfield, LLC d/b/a Urban Air Springfield ("Urban Air") appeals the trial court's denial of its motion to compel arbitration in a negligence action brought by Presley Karlin ("Karlin") after Karlin suffered injuries at Urban Air's facility. In two points on appeal, Urban Air contends the trial court erred in denying arbitration because Karlin was bound by an enforceable arbitration clause in that (1) his mother undisputedly had authority to sign for him and any questions regarding the duration of the agreement are subject to arbitration under the agreement's unchallenged delegation clause, and (2) his mother undisputedly had authority to sign for him, the agreement did not expire, and the agreement was never terminated. This Court

1

finds no valid and enforceable agreement to arbitrate and, therefore, affirms the trial court's interlocutory order.

## Factual Background and Procedural History

Urban Air is an interactive "trampoline and adventure park" located in Springfield, Missouri. On March 28, 2021, Karlin visited Urban Air and alleges he was injured on the Battle Beam attraction. The Battle Beam attraction is described as sword fighting with "foamy" swords on a balance beam over a pit of "cushy blocks." Karlin alleges he fell into the pit of "cushy blocks" "all the way to the hard surface below" the blocks and injured his back, and he required surgery for a burst vertebra. Karlin was 17 years of age at the time of his injury.

Karlin filed a lawsuit against Urban Air seeking damages for negligence.[1] Karlin alleges in his petition the pit below the Battle Beam contained an insufficient amount or quality of "cushy blocks"; that such insufficiency created a dangerous condition that Urban Air knew or should have known about; and Urban Air was negligent in failing to warn of the dangerous condition, remedy the dangerous condition, or barricade the dangerous condition.

After Karlin filed suit, Urban Air filed an Application to Compel Arbitration or, in the Alternative, Motion to Dismiss ("Application") in the trial court. Karlin opposed the Application. The Application relied on four separate Release and Indemnification Agreements (collectively, the "Releases"), each signed by an adult as "Parent/Guardian" for Karlin, which were required to be signed by any participant prior to their admission to Urban Air. Three releases were signed by Anthony Pantazis and one release was signed by Karlin's mother, Courtney Schneider. Two releases were signed by Mr. Pantazis on the date of the alleged injury, March 28, 2021. The third release signed by Mr. Pantazis was dated July 13, 2020. The release

---

[1] Mr. Karlin was 18 years of age at the time his petition was filed.

signed by Ms. Schneider was dated November 14, 2020, approximately four months prior to Karlin's alleged injury. Ms. Schneider filed an affidavit with the trial court stating that Mr. Pantazis is not related to Karlin and has never been appointed a legal guardian or conservator of Karlin.[2] The Releases provide that, by signing them, the signer warrants they are Karlin's parent or guardian.[3] Karlin did not sign any of the Releases himself. The substance of the Releases is identical (aside from the date and time they were signed, the identities of other participants, and the unique "Parent/Guardian" signature).

The Releases include provisions requiring the submission of all claims to binding arbitration and waiving a participant's right to a jury trial. The Releases read in pertinent part:

**RELEASE AND INDEMNIFICATION AGREEMENT**

**PLEASE READ THIS DOCUMENT CAREFULLY. BY SIGNING, YOU ARE GIVING UP LEGAL RIGHTS[.]**

This Release and Indemnification Agreement (Agreement) is entered into by the Adult Participant, and if any minor(s) is/are named below, the Adult Participant on behalf of and as parent or legal guardian for such Child Participant(s) identified below in favor of UATP Springfield LLC. (Urban Air). Collectively and severally, Adult Participant and Child Participant, their heirs, successors, and assigns are hereinafter referred to as the Participant. In consideration of Urban Air permitting Participant to enter the Premises and participate in the Activities, including the Activities that may occur in, about, or near 2825 S. Glenstone Ave. Springfield, MO 65804 or any other premises owned or operated by Urban Air wherever located (Premises), Participant agrees as follows:

. . . .

---

[2] The record before this Court does not provide any evidence as to Karlin's relationship to Anthony Pantazis.

[3] Paragraph 8 of the agreements reads:

8. AUTHORITY. If Adult Participant signs the Agreement on behalf of his/her spouse, child, family member, friend, minor child, or other person, Adult Participant warrants and represents to Urban Air that he/she has the legal authority and such person's actual or implied authority to execute this Agreement on their behalf, including, but not limited to, the arbitration clause, release, indemnity agreement, and license.

3

5. <u>RELEASE AND INDEMNITY.</u> **TO THE FULLEST EXTENT PERMITTED BY LAW, ADULT PARTICIPANT ON BEHALF OF HIMSELF, CHILD PARTICIPANT, AND THEIR HEIRS, EXECUTORS, AND REPRESENTATIVES RELEASES, AGREES NOT TO SUE, AND SHALL INDEMNIFY URBAN AIR, UATP MANAGEMENT LLC, UATP IP, LLC, UA ATTRACTIONS, LLC, THE LEGAL OWNER OF THE PREMISES, THE LANDLORD, MORTGAGEES AND MANAGEMENT COMPANY OF THE PREMISES, AND ANY OF THEIR LENDERS, PARENTS, AFFILIATES, SUBSIDIARIES, OFFICERS, DIRECTORS, SHAREHOLDERS, MEMBERS, MANAGERS, PARTNERS, AGENTS, EMPLOYEES, CONTRACTORS, REPRESENTATIVES, HEIRS, ASSIGNS, VOLUNTEERS, INDEPENDENT CONTRACTORS, EQUIPMENT SUPPLIERS, AND INSURERS OF ALL OF THEM (COLLECTIVELY, PROTECTED PARTIES) FROM AND AGAINST ALL LIABILITIES, LOSSES, DAMAGES, CLAIMS, DEMANDS, ACTIONS, SUITS, CAUSES OF ACTION, COSTS, FEES AND EXPENSES (INCLUDING REASONABLE ATTORNEY'S FEES AND COURT OR OTHER COSTS) (COLLECTIVELY, CLAIMS) RELATING TO, RESULTING FROM, OR ARISING OUT OF OR ALLEGED TO HAVE ARISEN OUT OF (IN WHOLE OR IN PART) ANY PROPERTY DAMAGE OR BODILY INJURY (INCLUDING DEATH) TO PARTICIPANT RESULTING IN ANY WAY FROM (A) PARTICIPANT'S USE OF THE PREMISES, (B) PARTICIPANT'S ACTIVE OR PASSIVE PARTICIPATION IN THE ACTIVITIES, (C) LOSS OR THEFT OF PERSONAL PROPERTY, (D) FROM THE CONSUMPTION OF ALCOHOL AT THE PREMISES BY PARTICIPANT OR ANY OTHER INVITEE OF URBAN AIR, OR (E) PARTICIPANT'S BREACH OF THIS AGREEMENT. THIS RELEASE AND INDEMNITY SHALL APPLY EVEN IF ANY [SIC] THE CLAIM IS CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE, GROSS NEGLIGENCE, STRICT LIABILITY, OR WILLFUL MISCONDUCT OF THE PROTECTED PARTIES OR PARTICIPANT. THE INDEMNITY SHALL ALSO INCLUDE ADULT PARTICIPANT'S OBLIGATION TO INDEMNIFY THE PROTECTED PARTIES FROM (Y) ANY SUM OR SETTLEMENT PAID TO OR ON BEHALF OF THE CHILD PARTICIPANT RESULTING FROM A CLAIM IN ANY WAY INVOLVING THE FOREGOING SUBSECTIONS AND (Z) ALL CLAIMS RESULTING FROM OR RELATING TO ANY INSUFFICIENCY OF PARTICIPANT'S LEGAL CAPACITY OR AUTHORITY TO EXECUTE THIS AGREEMENT FOR OR ON BEHALF OF THE CHILD PARTICIPANT.**

6. <u>DISPUTE RESOLUTION.</u>

   A. <u>ARBITRATION</u>. Any dispute or claim arising out of or relating to this Agreement, breach thereof, the Premises, Activities, property damage (real or personal), personal injury (including death), or the scope, arbitrability, or validity

4

of this arbitration agreement (<u>Dispute</u>) shall be brought by the parties in their individual capacity and not as a plaintiff or class member in any purported class or representative capacity, and settled by binding arbitration before a single arbitrator administered by the American Arbitration Association (<u>AAA</u>) per its Commercial Industry Arbitration Rules in effect at the time the demand for arbitration is filed. Judgment on the arbitration award may be entered in any federal or state court having jurisdiction thereof. The arbitrator shall have no authority to award punitive or exemplary damages. If the Dispute cannot be heard by the AAA for any reason, the Dispute shall be heard by an arbitrator mutually selected by the parties. If the parties cannot agree upon an arbitrator, then either party may petition an appropriate court to appoint an arbitrator. Arbitration and the enforcement of any award rendered in the arbitration proceedings shall be subject to and governed by 9 U.S.C. § 1 et seq.

B. <u>WAIVER OF JURY TRIAL</u>. **<u>TO THE EXTENT PERMITTED BY LAW, ADULT PARTICIPANT AND URBAN AIR KNOWINGLY, willingly, AND VOLUNTARILY, WITH FULL AWARENESS OF THE LEGAL CONSEQUENCES AFTER CONSULTING WITH COUNSEL (OR AFTER HAVING WAIVED THE OPPORTUNITY TO CONSULT WITH COUNSEL) AGREE TO WAIVE THEIR RIGHT TO a JURY TRIAL OF ANY DISPUTE AND TO RESOLVE ANY AND ALL DISPUTES THROUGH ARBITRATION</u>**. The right to a trial by jury is a right parties would or might otherwise have had under the Constitutions of the United States of America and the state in which the Premises is located.

Urban Air argued in its Application the release signed by Ms. Schneider in November 2020 remained in effect at the time of Karlin's subsequent visit on March 28, 2021, as there was no indication the release was only valid for one day and it contained no term of duration.[4] Urban Air also argued any dispute as to the term of the arbitration agreement should be resolved in arbitration. Karlin opposed the Application and asserted the release signed by his mother was only valid for one day, the date of the signed release, because the release provided no specific

---

[4] On appeal, Urban Air abandons its argument that Karlin is bound by the releases signed by Mr. Pantazis and is relying entirely on the release signed by Ms. Schneider, as mandating arbitration. *See* Opening Brief of Appellant pp. 10-11 and Oral Argument in this cause. Urban Air made additional arguments in favor of arbitration in its Application; those additional arguments were directed toward two releases signed by Mr. Pantazis and are, therefore, not relevant to this appeal.

5

duration and a new signed release is required each time Karlin, or any participant, enters the facility.

The trial court held a hearing on the Application. Following the hearing, by docket entry only, the trial court denied the Application. Urban Air timely filed this appeal.[5]

**Points on Appeal**

Urban Air presents two points on appeal. Both points assert the trial court erred in denying its Application in that Karlin's mother undisputedly had authority to sign the release on his behalf and, therefore, Karlin is bound by the enforceable arbitration agreement contained in the release. Urban Air claims any dispute regarding the duration of the arbitration agreement signed by Karlin's mother falls within the arbitration agreement's delegation clause and therefore should be decided by the arbitrator (Point I); and, alternatively, even if its duration is not a proper issue for determination by the arbitrator in arbitration, the arbitration agreement had neither expired nor terminated on the date Karlin was injured (Point II).

*Standard of Review*

> When there are factual disputes regarding the existence of an arbitration agreement, the circuit court shall conduct an evidentiary hearing to determine whether an arbitration agreement exists. *See* section 435.355.1;[] *Nitro Distrib., Inc. v. Dunn*, 194 S.W.3d 339, 352 (Mo. banc 2006). An appellate court's "review of the [circuit] court's determination as to the existence of an agreement itself is analogous to that in a court-tried case." *Kunzie v. Jack-In-The-Box, Inc.*, 330

---

[5] The trial court's order denying Urban Air's Application is not a final judgment, but is interlocutory in nature. An interlocutory order denying an application to compel arbitration is immediately appealable pursuant to section 435.440.1. *Keeling v. Preferred Poultry Supply, LLC*, 621 S.W.3d 672, 676 (Mo. App. S.D. 2021); *Sanford v. Centurytel of Missouri*, 490 S.W.3d 717, 718 (Mo. banc 2016); *Nicholson v. Surrey Vacation Resorts*, 463 S.W.3d 358, 366 (Mo. App. S.D. 2015). Urban Air's notice of appeal was timely filed within ten days after the trial court denied the application. Rule 81.04(a); *Sanford*, 490 S.W.3d at 718. All references to statutes are to RSMo Cum. Supp. 2022, and all rule references are to Missouri Court Rules (2023), unless otherwise indicated.

6

S.W.3d 476, 480 (Mo. App. 2010). As such, in an appeal from a circuit court's order overruling a motion to compel arbitration when there is a dispute as to whether the arbitration agreement exists,[] the circuit court's judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *See Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

***Theroff v. Dollar Tree Stores, Inc.***, 591 S.W.3d 432, 436 (Mo. banc 2020) (footnotes omitted).

*Analysis*

Before a party may be compelled to arbitrate, a court must first determine whether a valid enforceable agreement to arbitrate was formed between the parties. ***Brown v. GoJet Airlines, LLC***, 677 S.W.3d 514, 519 (Mo. banc 2023); ***Keeling***, 621 S.W.3d at 677; ***Nitro***, 194 S.W.3d at 345. An agreement to arbitrate is a contract subject to state contract laws and rules of interpretation. ***Nitro***, 194 S.W.3d at 345; *see* ***Rister v. NHC Healthcare – Osage Beach, LLC***, 674 S.W.3d 794, 797 (Mo. App. S.D. 2023) (stating whether an arbitration agreement is valid and enforceable is governed by Missouri contract law); ***Frye v. Speedway Chevrolet Cadillac***, 321 S.W.3d 429, 435, 436 (Mo. App. W.D. 2010) ("Missouri substantive law governs whether a valid arbitration contract exists."); ***Wilder v. Youngblood Motors, Inc.***, 534 S.W.3d 902, 908 (Mo. App. S.D. 2017) (holding that Missouri contract law is applied to determine whether parties have entered a valid agreement to arbitrate). The party seeking to compel arbitration bears the burden of proving the existence of an arbitration agreement. ***Brown***, 621 S.W.3d at 519; ***Wilder***, 534 S.W.3d at 907. "Under Missouri law, arbitration proceedings are favored and encouraged to further the public policy of dispute resolution without resort to the courts[.]" ***Lunsford v. Deatherage***, 518 S.W.3d 890, 894 (Mo. App. S.D. 2017) (quoting ***Riley v. Lucas Lofts Inv'rs, LLC***, 412 S.W.3d 285, 290 (Mo. App. E.D. 2013)); *see also* ***Cornerstone Propane, L.P. v. Precision Investments, L.L.C.***, 126 S.W.3d 419, 423 (Mo. App. S.D. 2004) ("Arbitration proceedings are favored and encouraged by the courts.").

7

Urban Air's points on appeal are both premised on the assumption that the November 14, 2020, release signed by Ms. Schneider was valid and enforceable at the time of Karlin's subsequent visit on March 28, 2021. The threshold issue before this Court is whether a binding arbitration agreement exists: Was the release containing the arbitration agreement and signed by Ms. Schneider in November 2020 binding on Karlin for all subsequent visits, including his visit on March 28, 2021? We determine it was not.

The cardinal rule in the interpretation of a contract under Missouri law is to ascertain the intent of the parties and to give effect to that intent. *J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club*, 491 S.W.2d 261, 264 (Mo. banc 1973). When an agreement does not provide the length of time it shall be effective and binding on the parties, the intent of the parties as to the agreement's duration is determined from the "surrounding circumstances and by application of a reasonable construction of the agreement as a whole; and the duration of a contract may be implied from the nature of the contract or from the circumstances surrounding it." *Ditto, Inc. v. Davids*, 457 S.W.3d 1, 10 (Mo. App. W.D. 2014) (quoting *Union Pac. R. Co. v. Kansas City Transit Co.*, 401 S.W.2d 528, 534 (Mo. App. W.D. 1966)).

It is undisputed that the release signed by Ms. Schneider does not contain a term of duration. Urban Air argues that the release applies to "any" dispute or claim arising out of activities on the date the release was signed and to any subsequent date the participant visits the facility. Karlin contends the release signed by his mother was valid only for the one-day entry to Urban Air on November 14, 2020, and the release expired when he left Urban Air that same day. Karlin argues this interpretation is supported by the evidence before the trial court in that the release provided no specific duration and a new signed release is required each time Karlin, or any participant, enters the facility. We agree with Karlin.

Here, the purpose of the release, among other things, is to waive, or release, any claims resulting from activities at the facility, a participant's right to jury trial, and to resolve all disputes through arbitration "[i]n consideration of Urban Air permitting Participant to enter the Premises and participate in the Activities" at Urban Air's facility. Each release is signed and dated on the day the participant enters the facility, and a new signed release is required on each subsequent visit. The nature of the release and the circumstances surrounding its formation evidence an intent that its duration is limited to the date signed and of entry. In light of those two factors, the intent of the parties in this case is to allow entry into Urban Air's facility on the date the release is signed in exchange for a participant's agreement to waive a jury trial and arbitrate *any* claims arising out of activities within its facility ***on the date the release is signed***. The obligation to waive certain rights is ongoing, but only as to any claims arising from activities on the date of the release. To interpret the release as argued by Urban Air, that the release applies to any dispute or claim arising out of activities on its premises the date the release was signed or any other subsequent date the participant visits, is not a reasonable construction of the agreement given the nature of and circumstances surrounding its formation and the fact that a new release must be signed before any subsequent entrance into the facility is allowed. Therefore, we determine the duration of the release signed by Ms. Schneider was one day, November 14, 2020. As such, there was no valid release containing an arbitration agreement enforceable against Karlin on the date of his alleged injuries at Urban Air.

Lacking a valid agreement to arbitrate, the trial court did not err in denying the Application filed by Urban Air. Finding as such, this Court need not address any remaining points on appeal.

The trial court's interlocutory order denying Urban Air's Application is affirmed.

9

JENNIFER R. GROWCOCK, J. – OPINION AUTHOR

MARY W. SHEFFIELD, J. – CONCURS

GINGER K. GOOCH, Sp.J. – CONCURS